**No. 2014-1724**

# United States Court of Appeals for the Federal Circuit

INTELLECTUAL VENTURES II, LLC,

*Plaintiff-Appellee,*

v.

DEFENDANT-APPELLANTS JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, NAT'L ASS'N, AND CHASE BANK USA, NAT'L ASS'N, CHASE PAYMENTECH SOLUTIONS LLC AND PAYMENTECH LLC,

*Defendants-Appellants.*

Appeal from the U.S. District Court for the Southern District of New York, Judge Alvin K. Hellerstein, No. 13-CV-3777

## OPENING BRIEF OF APPELLANTS

Mark A. Lemley
Clement S. Roberts
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

Kenneth R. Adamo
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

*Counsel for Defendants-Appellants*

September 15, 2014

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants certifies the following:

**1.     The full name of every party represented by me is:**

JPMorgan Chase & Co., JPMorgan Chase Bank, National Association, and Chase Bank USA, National Association, Chase Paymentech Solutions LLC, and Paymentech LLC are the real parties in interest.

**2.     The name of the real party in interest is:**

JPMorgan Chase & Co., JPMorgan Chase Bank, National Association, and Chase Bank USA, National Association, Chase Paymentech Solutions LLC, and Paymentech LLC are the real parties in interest.

**3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:**

JPMorgan Chase & Co. is a publicly-traded company listed on the NYSE under the symbol JPM.

- JPMorgan Chase & Co. has no parent corporation or other company that holds 10% or more of its stock.

- JPMorgan Chase Bank, National Association is a wholly-owned subsidiary of JPMorgan Chase & Co.

- Chase Bank USA, National Association is a wholly-owned indirect subsidiary of JPMorgan Chase & Co.

- Chase Paymentech Solutions LLC is an indirect wholly-owned subsidiary of JPMorgan Chase & Co.

- Paymentech LLC is an indirect wholly-owned subsidiary of JPMorgan Chase & Co.

**4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:**

Tibor L. Nagy, Jr., Matthew S. Dontzin, David A. Fleissig, Patrick R. McGee, all of Dontzin, Nagy & Fleissig, LLP; Clement S. Roberts and Mark A. Lemley, all of Durie Tangri LLP; and Kenneth R. Adamo, Brent P. Ray, Eugene Goryunov, Benjamin A. Lasky, Ryan M. Hubbard, and David Higer, all of Kirkland & Ellis, LLP.

# TABLE OF CONTENTS

Statement of Related Cases ................................................................. v

Preliminary Statement .................................................................... 1

Statement of Jurisdiction .................................................................. 1

Statement of the Issue .................................................................... 2

Statement of The Case .................................................................... 2

I.  Background ........................................................................... 2

II.  The District Court Proceedings ......................................... 3

    A.  The District Court Scheduled an Early *Markman* Hearing ........................................................................... 4

    B.  The District Court Instructed JPMC to File Summary Judgment Motions after the *Markman* Hearing ................... 5

    C.  The District Court Held a *Markman* Hearing and Issued Claim Constructions from the Bench ......................... 6

    D.  The District Court Instructed JPMC to File Summary Judgment Motions after the Close of Fact Discovery ............ 6

    E.  The District Court Encouraged the Parties to Forgo Standard Discovery Procedures ............................................... 7

    F.  Various Non-Parties Filed Numerous Petitions Requesting IPR of the Patents-at-Issue ................................ 8

    G.  JPMC Filed Petitions Requesting CBMR of Two of the Patents-at-Issue ............................................................... 8

    H.  All Other Same Patent Cases Have Been Stayed ................ 10

    I.  JPMC Filed a Motion to Stay the Case Pending the PTAB's Review of the Patents-at-Issue ................................ 12

    J.  The District Court Denied JPMC's Stay Motion ................... 13

Summary Of The Argument ................................................... 19

Argument ................................................................................ 19

I.  Standard of Review ........................................................... 19

II.  The District Court Should Have Stayed the Case ......................... 22

A.     A Stay Will Simplify and Streamline Issues .........................22

B.     The Case Is Far From Complete ...........................................25

C.     IV Will Suffer No Prejudice From Delay, and Will
       Obtain a Tactical Advantage From the Denial of Stay ........27

D.     The District Court Abused its Discretion in Denying
       the Stay.................................................................................33

Conclusion.............................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
  2014 WL 1369721 (D. Del. Apr. 7, 2014) ............................... 29

*Cal. Pub. Emp. Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004) ..................................................... 18

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) ............................................................... 29

*Evolutionary Intelligence LLC v. Yelp Inc.*,
  2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) ....................... 29

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  733 F.3d 1369 (Fed. Cir. 2013) ............................................. 23

General Motors Corp. v. Devex Corp.,
  461 U.S. 648 (1983) ............................................................... 29

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
  386 F.3d 107 (2d Cir. 2004) ................................................... 18

*Ryan Operations GP v. Santiam-Midwest Lumber Co.*,
  81 F.3d 355 (3d Cir. 1996) ..................................................... 31

*Sky Techs. LLC v. SAP AG*,
  576 F.3d 1374 (Fed. Cir. 2009) ............................................. 18

*Toro Co. v. White Consol. Indus.*,
  199 F.3d 1295 (Fed. Cir. 1999) ............................................. 20

*U.S. v. Phillip Morris USA, Inc.*,
  396 F.3d 1190 (D.D.C. 2005) ................................................. 18

*VirtualAgility Inc. v. SalesForce.com, Inc.*,
  2014 WL 3360806 (Fed. Cir. July 10, 2014) ............... *passim*

*Yamaha Motor Corp., USA v. Calhoun*,
  516 U.S. 199 (1996) ............................................................... 18

**Statutes**

125 Stat. 284 (2011) ..................................................................... 1
28 U.S.C. § 1331 ........................................................................... 1
28 U.S.C. § 1338(a) ...................................................................... 1
35 U.S.C. § 314(a) ....................................................................... 34
35 U.S.C. § 324(a) ....................................................................... 34
AIA § 18(b)(1)(A) ....................................................................... 22
AIA § 18(b)(1)(B) ....................................................................... 25
AIA § 18(b)(1)(C) ....................................................................... 27

AIA § 18(b)(1)(D)..................................................................22
AIA § 18(b)(2) .................................................................2, 21

## Other Authorities

157 Cong. Rec. S1053–02, (daily ed. Mar. 1, 2011) ...............21
157 Cong. Rec. S1360–02, (daily ed. Mar. 8, 2011)...............21
157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011).....................33
157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011).....................33
S.D.N.Y. Local Patent Rule 1.................................................4
S.D.N.Y. Local Patent Rules 6, 7, 11, and 12.........................4

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Appellants state the following:

No other appeal in or from the same civil action or proceeding in the lower court or body was previously before this Court or another appellate court.

# PRELIMINARY STATEMENT

Plaintiff-Appellee Intellectual Ventures II, LLC ("IV") has filed seven suits in seven different courts all asserting the same five patents against seven different banking institutions. Every one of those patents is now the subject of a pending or instituted petition requesting *inter partes* review ("IPR") and/or covered business method review ("CBMR"). On the basis of those proceedings, all seven banking institutions filed stay motions. Six of the seven judges granted those motions, and stayed the case. Only Judge Hellerstein refused to do so despite the clear mandate of Section 18 of the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 331 (2011), that courts should grant stays when doing so would serve the interests of judicial economy and potentially simplify the proceedings. Because the District Court parted ways with the six other judges who considered this exact issue, this Court should reverse the District Court's denial of the motion to stay.

# STATEMENT OF JURISDICTION

This is a patent case, arising under the patent laws of the United States, Title 35 of the U.S. Code. The District Court has subject matter jurisdiction. 28 U.S.C. §§ 1331 and 1338(a). This Court has appellate jurisdiction pursuant to the statute permitting interlocutory appeals

from orders pertaining to motions to stay pursuant to Section 18(b) of the AIA.  AIA § 18(b)(2) ("A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1) [motion for stay]. The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be *de novo*.").

## STATEMENT OF THE ISSUE

1.  Did the District Court err in refusing to stay the underlying case despite (a) the early stage of the proceedings, (b) the pendency of CBMR and IPR proceedings that could resolve the case entirely, and (c) the fact that six other district courts concluded that a stay of the proceedings involving the same patents was appropriate?

## STATEMENT OF THE CASE

## I.    Background

IV sued Defendant-Appellants JPMorgan Chase & Co., JPMorgan Chase Bank, Nat'l Ass'n, and Chase Bank USA, Nat'l Ass'n, Chase Paymentech Solutions LLC, and Paymentech LLC (collectively, "JPMC") on June 4, 2013.  IV has accused JPMC of allegedly infringing five patents: U.S. Patent Nos. 5,745,574 ("the '574 patent"); 6,826,694 ("the '694 patent"); 6,715,084 ("the '084 patent"); 6,314,409 ("the '409

patent"); and 7,634,666 ("the '666 patent") (collectively, "the patents-at-issue").

IV's lawsuit against JPMC is just one of seven lawsuits IV filed in seven different district courts in a span of two months, all asserting the same five patents against seven different banking institutions. *First Nat'l Bank of Omaha*, No. 8:13-cv-167 (D. Neb.) (the "*FNBO* case"); *BBVA Compass Bancshares, Inc.*, No. 2:13-cv-1106 (N.D. Ala.) (the "*Compass* case"); *Commerce Bancshares, Inc.*, No. 2:13-cv-4160 (W.D. Mo.) (the "*Commerce* case"); *SunTrust Banks, Inc.*, No. 1:13-cv-2454 (N.D. Ga.) (the "*SunTrust* case"); *U.S. Bancorp*, No. 13-cv-2071 (D. Minn.) (the "*USBank* case") (collectively, "Same Patent Cases").

JPMC is one of the premier banking institutions in the nation, and offers online banking services, credit cards, and other financial instruments. A598-600 (Answer ¶¶ 2-6.) IV is a non-practicing entity ("NPE") that acquires and licenses patents. A787 (Amended Complaint ¶ 11.) To date, IV has acquired more than 70,000 patents. *Id.*

## II.    The District Court Proceedings

In what started out as a typical patent infringement lawsuit, IV filed a Complaint on June 4, 2013, accusing JPMC of infringing the

patents-at-issue, and subsequently filed an Amended Complaint on March 24, 2014. A151, A157 (Docket Sheet at Dkt. Nos. 1, 84.) IV's Amended Complaint seeks recovery of money damages. IV has not made any allegations of irreparable harm or demanded injunctive relief. A799-800 (Amended Complaint.) In its Answer, JPMC asserted affirmative defenses and counterclaims asserting that all five patents-at-issue were invalid under 35 U.S.C. §§ 101, 102, 103, and 112. A616, A619-623 (Answer); A823, A826-830 (Amended Answer.)

There has been nothing typical about this case following the exchange of initial pleadings.

## A. The District Court Scheduled an Early *Markman* Hearing

The Southern District of New York provides a structure for patent cases and suggests a timeline: plaintiffs' infringement contentions, followed by defendants' invalidity contentions, then the exchange of disputed claim terms, and finally claim construction. *See* S.D.N.Y. Local Patent Rules 6, 7, 11, and 12. The Local Patent Rules allow a district court to "modify the obligations or deadlines . . . based on the circumstances of any particular case." S.D.N.Y. Local Patent Rule 1.

At the outset of this case, the District Court chose to disregard the

Local Patent Rules:

> I have read your letter [asking for early summary judgment]. It's not how I customarily deal with patent cases, and it gave me the opportunity to read the local rules for patent cases. **Forget about them; we're not going to go that way**.

A632 (Oct. 3, 2013, Conference at 2:3-6 (emphasis added).)  The District

Court elected to immediately hold a *Markman* hearing, before any

discovery had been taken and before infringement and invalidity

contentions were exchanged.  A632-633 (*Id.* at 2-3.)

Two weeks after deciding to hold an early *Markman* hearing, on

October 16, 2013, the District Court *sua sponte* stayed all discovery

until after the *Markman* hearing.  *See* A648.  Discovery in the

underlying case only started on March 6, 2014.

### B.    The District Court Instructed JPMC to File Summary Judgment Motions after the *Markman* Hearing

JPMC asked the District Court for permission to file motions

seeking summary judgment of invalidity under Section 101 at the very

start of the case.  A626-628.  The District Court instructed JPMC to

"hold" any motions until after the tutorial and *Markman* hearing:

> Why don't you hold [any summary judgment motion]. You can make it any time.  The tutorial and the *Markman* are

not going to be terribly expensive.  And if you have a motion
after that, you can make it.

A635 (Oct. 3, 2013, Conference at 5:10-13.)  JPMC proceeded consistent

with the District Court's instructions.

## C. The District Court Held a *Markman* Hearing and Issued Claim Constructions from the Bench

At first, the District Court expressed the belief that *Markman*

briefs would not be helpful to a *Markman* hearing.  A642 (Oct. 3, 2013,

Conference at 12:11-19.)  With the District Court's consent, however,

the parties submitted claim construction briefs on February 26 and 27,

2014.  A156 (Docket Sheet, Dkt. Nos. 68-73.)  The District Court held a

*Markman* hearing on March 5-6, 2014, and construed all disputed terms

from the bench.  A651 (Mar. 5, 2014, Tr. of Claim Construction at 3:18-

25.)  It subsequently issued a claim construction order consistent with

its earlier ruling.  A770-782.

## D. The District Court Instructed JPMC to File Summary Judgment Motions after the Close of Fact Discovery

At the conclusion of the *Markman* hearing, JPMC renewed its

request to file motions seeking summary judgment of invalidity under

Section 101 in an attempt to streamline the case.  The District Court

stated that it was not inclined to entertain such motions:

6

[JPMC's Counsel:] We can tell your Honor now that we believe there are at least two patents where we can bring motions that would not require discovery.  It would be dispositive and that would substantially narrow the issues. From our client's perspective, your Honor, there is substantial expense for each of these patents because each of them cut across different areas of the bank, each of them involve different sets of witnesses. . . . We don't believe there is patentable subject matter in at least two of these patents. We think your rulings make that even clearer than beforehand.  What we would like to do with respect to those patents is make those motions. . . .

THE COURT: I'm not in favor of that.

A756-757 (Mar. 6, 2014, Tr. of Claim Construction at 108:22-109:19.)

Again, JPMC acquiesced and did not file any summary judgment motions based on Section 101 or otherwise.

## E.    The District Court Encouraged the Parties to Forgo Standard Discovery Procedures

After the *Markman* hearing, IV asserted additional claims against JPMC for a total of 77 claims across the patents-at-issue.  A833 (Apr. 11, 2014, Rutledge E-Mail.)  At the District Court's urging, the parties agreed to forgo serving interrogatories and requests for production, and to simply produce all relevant documents in two batches: technical documents (due Aug. 14), and non-technical documents (due Sept. 16). A929-932 (May 16, 2004, Joint Letter).

**F.    Various    Non-Parties    Filed    Numerous    Petitions Requesting IPR of the Patents-at-Issue**

On    November    20,    2013,    non-party    International    Business Machines Corp. ("IBM") filed a petition requesting IPR of all claims of the '666 Patent.  A155 (Notice of IPR.)  Less than five months later, on April 16, 2014, the PTAB issued an Order instituting an IPR of the '666 Patent, finding that IBM had "established a reasonable likelihood that [it] would prevail" in demonstrating that the claims of the '666 Patent are invalid over the prior art.  A834 (Notice of Institution of IPR.)

Between April 7, 2014, and May 20, 2014, various non-parties— IBM, BBVA Compass Bancshares, Inc. ("Compass"), Commerce Bancshares, Inc. ("Commerce"), and First National Bank of Omaha ("FNBO")—filed twelve (12) additional petitions requesting IPR of each of the four remaining patents-at-issue.  A866-868 (Notice of IPR); Dkt. No. 3, Motion to Expedite Ex. 13 (IPR Dockets.)  These additional petitions remain pending.

**G.    JPMC Filed Petitions Requesting CBMR of Two of the Patents-at-Issue**

On June 19, 2014, the U.S. Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  JPMC promptly filed a petition requesting CBMR of the '409 Patent under the USPTO's

8

Transitional Program on July 11, 2014, having determined that *Alice* was highly relevant to JPMC's Section 101 challenge. One week later, on July 18, 2014, JPMC filed a petition requesting CBMR of the '574 Patent. Both petitions relied heavily on the Court's decision in *Alice*. A985-987 ('409 CBMR Petition), A1057-1060 ('574 CBMR Petition.)

Collectively, these fifteen (15) IPR and CBMR proceedings challenge the validity of all claims asserted against JPMC. The table below identifies the various PTAB proceedings, summarizes the status of each, and identifies the latest date the PTAB may issue a decision instituting review or issue a final decision on the patentability of the challenged claims. *See* Dkt. No. 3, Motion to Expedite, Ex. 13 (IPR Dockets.)

| Pat. | PTAB Case No. | Filing | Latest Date of PTAB Decision |
|------|---------------|--------|------------------------------|
| '694 | IPR2014-00587 | 04/07/2014 | 10/15/2014 (Decision on Institution) |
| '574 | IPR2014-00660 | 04/17/2014 | 10/23/2014 (Decision on Institution) |
| '409 | IPR2014-00672 | 04/18/2014 | 10/23/2014 (Decision on Institution) |
| '409 | IPR2014-00673 | 04/18/2014 | 10/23/2014 (Decision on Institution) |
| '084 | IPR2014-00681 | 04/23/2014 | 10/31/2014 (Decision on Institution) |
| '084 | IPR2014-00682 | 04/23/2014 | 10/31/2014 (Decision on Institution) |

| Pat. | PTAB Case No. | Filing | Latest Date of PTAB Decision |
|---|---|---|---|
| '574 | IPR2014-00724 | 05/01/2014 | 11/10/2014 (Decision on Institution) |
| '409 | IPR2014-00719 | 05/01/2014 | 11/10/2014 (Decision on Institution) |
| '409 | IPR2014-00722 | 05/01/2014 | 11/10/2014 (Decision on Institution) |
| '694 | IPR2014-00786 | 05/20/2014 | 11/30/2014 (Decision on Institution) |
| '084 | IPR2014-00793 | 05/21/2014 | 12/03/2014 (Decision on Institution) |
| '084 | IPR2014-00801 | 05/22/2014 | 12/05/2014 (Decision on Institution) |
| '409 | CBM2014-00157 | 07/11/2014 | 02/03/2015 (Decision on Institution) |
| '574 | CBM2014-00160 | 07/18/2014 | 02/03/2015 (Decision on Institution) |
| '666 | IPR2014-00180 | 11/20/2013 | 04/16/2015 (Final Decision) |

## H.    All Other Same Patent Cases Have Been Stayed

Each defendant in the Same Patent Cases moved for a stay pending the PTAB's review of the patents-at-issue.  Between May 6, 2014, and August 7, 2014, five of the Same Patent Cases were stayed. A213-214 (order staying the *Compass* case); A209-211 (order staying the *FNBO* case); A934-955 (ordering staying the *USBank* case); A216-224 (order staying the *Commerce* case); A226-234 (order staying the *Huntington* case.)  On August 14, 2014, the sixth Same Patent Case was stayed pending that district court's forthcoming decision on the stay

motion.    A977 (Tr. of Aug. 14, 2014, Tele. Conference at 17:23-24, *SunTrust* case); A984.

Four of the district courts in the Same Patent Cases issued written decisions detailing the reasons for granting the stay.  A209-211 (order staying the *FNBO* case); A934-955 (ordering staying the *USBank* case); A216 (order staying the *Commerce* case); A226-234 (order staying the *Huntington* case.)  Each of the district courts found that all relevant factors weighed in favor of a stay, concluding that (1) IV would not suffer any undue prejudice or be tactically disadvantaged by a stay; (2) issues would be simplified by a stay; and (3) the early stage of each case favored a stay.  *Id.*  The table below identifies the other Same Patent Cases and summarizes the current status of each case.

| Case Name | Case Status |
|---|---|
| *FNBO* case | Stay granted on May 6, 2014. |
| *Compass* case | Stay granted on June 4, 2014. |
| *Commerce* case | Stay granted on June 4, 2014. |
| *Huntington* case | Stay granted on June 10, 2014. |
| *USBank* case | Stay granted on August 7, 2014. |
| *SunTrust* case | The Court stayed all discovery on August 14, 2014, pending decision on stay motion. |

11

## I.    JPMC Filed a Motion to Stay the Case Pending the PTAB's Review of the Patents-at-Issue

On June 27, 2014, JPMC filed a motion to stay the case pending the PTAB's review of the patents-at-issue.  At the time the stay motion was filed, discovery had been proceeding for only three months and the following events had taken place:

- *Markman* hearing on March 5-6, 2014.  A156.

- Exchange of infringement and invalidity contentions on April 11, 2014. A832-833 (April 11, 2014, E-Mails.)

The following events had yet to occur as of the filing of the stay motion:

- Complete production of technical documents

- Production of non-technical documents

- Production of e-mails

- Written discovery

- Complete fact discovery

- Resolution of any discovery motions

- All party and all (but one) non-party depositions

- Final infringement and invalidity contentions

- Expert discovery

In addition to all of the above, the District Court had yet to set a trial date when JPMC filed the motion to stay.

JPMC's stay motion relied on three arguments: (1) the resolution of validity at the PTAB would significantly reduce the burden and expense of litigation without prejudicing either party; (2) the other Same Patent Cases had all been stayed (or were to be stayed shortly), and refusing to stay this case would prevent any coordinated discovery; and (3) Congress "specifically and emphatically intended that stays be granted pending CBMRs." A165-166. JPMC's motion demonstrated a stay was proper under both the traditional stay factors and the factors set forth in AIA § 18(b)(1).

In response, IV argued that (1) "a stay likely would last at least three years," (2) "Documents have been produced. JPMC has requested the production of e-mail from IV. Depositions have been taken," (3) if granted, the IPRs would "have only a limited chance of significantly simplifying the issues in this case," and (4) JPMC would get a "free ride" on any IPRs it did not file. A279-281. Briefing on the motion was completed on July 18, 2014. A160 (Docket Sheet, Dkt. No. 146.)

## J.    The District Court Denied JPMC's Stay Motion

Though JPMC filed its stay motion on June 27, 2014, this was not the first time the District Court addressed a stay of the case pending

the PTAB's review.  On October 3, 2013, JPMC informed the District

Court that requests for post-grant review may be filed on the patents-

at-issue.  The District Court remarked:

> If I have discretion, I'll do what I have to do to run the case;
> and if something happens in the patent office that
> supersedes something I do, so be it.  But ***I don't wait for
> other people.***
>
> . . .
>
> But I'm running this case, as far as I have discretion to do
> so. I'll give you dates, and we'll move along.  And whatever
> happens somewhere else, happens somewhere else.

A640 (Oct. 3, 2013, Conference at 10:4-7, 10:14-17 (emphasis added).)

In other words, the District Court indicated that it was opposed to stay

motions on principle.  At a later conference, the District Court informed

the parties that it was not the court's policy to stay the cases in view of

post-grant reviews:

> THE COURT: So a delegation, I am told -- I wasn't there -- a
> delegation of the judges in the patent office came to this
> court to describe what's going on there to in effect give the
> judges here assurance that those proceedings will be moved
> swiftly and a fresh look will be taken to the patents.  My
> view is that there is a case before me and it is my job to
> move the case as rapidly and efficiently as fairness requires.
> So whatever is done in the patent office, you do. ***But it is
> not cause to ask for delay in my court. That is my
> policy***. . . . So if there is something that should compel, in
> defendant's point of view a stay, you have to ask me for it.
> But my predisposition is not to grant a stay.

14

A920-921 (May 8, 2014, Conference at 16:14-17:1 (emphasis added).)

Later, when asked about the visit from the delegation of judge's from

the patent office, the District Court stated:

> I think they [the judges from the patent office] are on an
> educational mission. I think they would like the district
> judges to defer to them and, as you know, ***I have my own
> opinions on that.***

A924 (May 8, 2014, Conference at 20:17-19 (emphasis added).)  Despite

these comments, JPMC filed its stay motion, as more petitions for

review were filed, and all the district courts in the Same Patent Cases

unanimously found all relevant factors weighed in favor of a stay.

On August 11, 2014, the District Court denied JPMC's motion to

stay. A1-10.  In contrast to the other district courts that all found the

relevant stay factors to weigh in favor of a stay, the District Court found

all stay factors weighed **against** a stay.  The District Court's order

described the status of the case as "mak[ing] significant progress

towards trial" because, according to the court:

> By August 20, 2014, document discovery between the
> parties, but not of third parties, should be complete, and a
> third of the intended depositions should have been taken.
> Expert discovery, *Daubert* hearings, and trial should follow.
> The case should be resolved, by motion or by jury, by the
> summer of 2015, two-plus years after filing.

A2.   The District Court's order analyzed the stay motion under the traditional stay factors **and** under the factors set forth in AIA § 18(b)(1).   In summary, the District Court determined that under traditional stay factors:

| | |
|---|---|
| **First Factor (Streamlining the Litigation)** | "[T]he IPR can take up to 18 months' time in the PTAB, and there may be two years of appellate review in the Federal Circuit, creating a three-year delay, or more."<br><br>"I do not understand the sense of staying this entire litigation in order to wait for the PTAB's review of a single patent claim, where multiple patents and multiple claims are in issue." A5. |
| **Second Factor (Tactical Advantage)** | "Staying this case would give JPMC an unfair tactical advantage. . . . JPMC would have the advantage of delay and continuing utilization of patented devices and systems that the law suit is intended to regulate." A6. |
| **Third Factor (The Effect of Delay)** | "Staying this case pending the resolution of the petitions for IPR would interrupt the work of this Court. The IPR process can take up to 24 months between the filing of a petition for review and the PTAB's issuance of a final decision. . . . The parties may then appeal the PTAB's decision to the Federal Circuit Court of Appeals, with all the attendant delays of the appellate process, perhaps another two years." A6. |

The District Court concluded a stay was not warranted under the traditional stay factors.   The District Court then "ported over" its IPR-

based analysis to analyze the stay motion under the AIA stay factors set

forth in AIA § 18(b)(1):

| | |
|---|---|
| **First Factor (Simplification of the Issues)** | "I fail to understand why it would be cheaper, or more efficient or quicker, to wait for three-and-a-half years and speculate what benefit might be achieved by a CMBR [*sic*]." A8. |
| **Second Factor (Stage of the Litigation)** | "The CBMR process can take up to 24 months between the filing of a petition for review and the PTAB's issuance of a final decision. . . . The parties may then appeal the PTAB's decision to the Federal Circuit Court of Appeals, with all the attendant delays of the appellate process, perhaps another two years. . . . Thus, staying this case pending the PTAB's resolution of JPMC's petitions for CBMR could result in substantial delay." A8-9. |
| **Third Factor (Undue Prejudice on the Non-Movant)** | "Again, staying this case would give JPMC an unfair tactical advantage. Intellectual Ventures would lose the benefit promised by the Federal Rules of Civil Procedure—a 'just, speedy, and inexpensive determination of every action and proceeding.' Fed. R. Civ. P. 1. JPMC would have the advantage of delay and continuing utilization of patented devices and systems that the law suit is intended to regulate." A9. |
| **Fourth Factor (Reducing the Burden of Litigation)** | "JPMC's argument that the PTAB's resolution of the petitions for CMBR [*sic*] will reduce the work in this Court and for the parties is largely speculative. I do not understand the sense of staying this entire litigation in order to wait to see what the PTAB will do." A9. |

Based on this analysis, the District Court again concluded that all factors weighed against a stay. The District Court found that "[t]he case before me will end in less than a year. It makes no sense for me to delay its resolution further by waiting, for four years, on the intercession of another forum with only a limited jurisdiction over these claims." A10.

Two days later, JPMC filed a notice of appeal. A956-959. As review of the entire order is permitted, JPMC appeals the District Court's order denying the stay under both the traditional stay factors and the factors set forth in AIA § 18(b)(1). As JPMC explained in its Opposition to IV's Motion to Dismiss, the District Court's order denying JPMC's stay motion is the subject of this interlocutory appeal, in its entirety. (Dkt. No. 25 at 7-9 (citing *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 205 (1996), *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1378-79 (Fed. Cir. 2009), *Cal. Pub. Emp. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004), *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 115 (2d Cir. 2004), *U.S. v. Phillip Morris USA, Inc.*, 396 F.3d 1190, 1195-96 (D.D.C. 2005)).)

## SUMMARY OF THE ARGUMENT

Section 18 of the AIA sets out four factors a court must consider in deciding whether to grant a stay pending CBMR.  The District Court departed from the analysis performed by all six of its fellow courts in concluding that every one of those factors weighed against a stay in this case.  The District Court abused its discretion in doing so.  Each of those factors favors granting a stay.  The case is still in its early stages.  A stay would enable the PTO to complete its review of the patents-at-issue, with the potential to resolve all issues in this case, and would, no doubt, save significant party and judicial resources in doing so.  A stay would also be consistent with the rulings of other courts, and would prevent IV from being allowed to act strategically to choose which of its cases goes forward and which does not.

## ARGUMENT

### I.    Standard of Review

The proper standard of review of a decision not to stay a case pending CBMR is a question of first impression in this Court.  The only case to consider the issue declined to resolve it.  *VirtualAgility Inc. v. SalesForce.com, Inc.*, 2014 WL 3360806 (Fed. Cir. July 10, 2014).

The appropriate standard of review is *de novo*.

19

The AIA established a right of immediate interlocutory appeal to this Court of a denial of a stay pending CBMR.  In establishing that right, the AIA provided that "such review may be *de novo*."  AIA § 18(b)(2).  While that language does not compel *de novo* review, as this Court noted in *VirtualAgility*, *de novo* review is the "only standard mentioned in the statute."  2014 WL 3360806, at *2.

First, there would be no reason to mention *de novo* review, and only *de novo* review, in the statute if Congress did not intend for this Court to apply it.  An abuse of discretion standard of review would require this Court to conclude that the relevant portion of the AIA is meaningless.  An interpretation of a statutory provision that renders it meaningless, however, is rarely if ever correct.  *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1300 (Fed. Cir. 1999) (an interpretation that would render a statutory provision meaningless is incorrect).

Second, AIA § 18(b)(2) was passed against a backdrop of deferential review and very few appeals.  *VirtualAgility,* 2014 WL 3360806, at *2.  Congress clearly intended a change by establishing a more substantive review of stay decisions by this Court.  Indeed, the principal drafter of the CBMR provisions, Senator Schumer, made clear

he envisioned stays to be nearly automatic. *See* 157 CONG. REC. S1053–02, 2011 WL 709598 (daily ed. Mar. 1, 2011) (statement of Sen. Schumer) ("Since the entire purpose of the [CBMR] at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay."); 157 CONG. REC. S1360–02, 1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer), 2011 WL 797877 (denial of a stay pending CBMR requires "an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination."). *De novo* review is consistent with that purpose.

Third, the AIA makes clear that the purpose of an interlocutory review of CBMR-related stay decisions is "to ensure consistent application of established precedent." AIA § 18(b)(2). Here, the District Court disagreed with six other district courts that had granted at least temporary stays involving the same patents-at-issue. Deference to the inconsistent determinations of district courts relating to the same patent is at odds with the "consistent application" of the stay factors.

Nevertheless, as demonstrated below, the District Court clearly abused its discretion even if this Court were to apply that standard.

## II.    The District Court Should Have Stayed the Case

### A.    A Stay Will Simplify and Streamline Issues

The first relevant factor is "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial."  AIA § 18(b)(1)(A).  The fourth factor is "whether a stay, or a denial thereof, will reduce the burden of litigation on the parties and on the court."  AIA § 18(b)(1)(D).  As this Court noted in *VirtualAgility*, "there is a great deal of overlap" between these two factors.  2014 WL 3360806, at *5.  They are, however, separate factors and both must be considered.  *Id.*  Because of the overlap, JPMC addresses these two factors together, as this Court did in *VirtualAgility*.

In this case, all five patents-at-issue are subject to multiple PTO proceedings.  The PTO has already instituted an IPR trial of the '666 Patent; the other requests remain pending.  There is no question that staying the case pending the resolution of those proceedings has the potential to make continued litigation of this case unnecessary.  At a minimum, it will "streamline" the case by allowing the parties to focus on whatever claims survive PTO review.  The reverse is not true.  If the stay is denied and this case is litigated to judgment, the PTO proceedings will continue apace.  Even if IV prevails in the district

court, it will not be entitled to enforce its patents against JPMC or anyone else unless it also prevails at the PTO. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1372 (Fed. Cir. 2013).

In *VirtualAgility*, this Court found it highly significant that "[t]his CBM review could dispose of the entire litigation." 2014 WL 3360806, at *5. Indeed, this Court noted that the only cases to deny a stay pending CBMR were those where only some claims were the subject of review because the case would definitely come back to the district court regardless of the outcome at the PTO. *Id.* That is not the case here.

The District Court concluded that not every patent was the subject of a proceeding at the PTO. But it could reach that conclusion only by separately considering a stay pending IPR and a stay pending CBMR. That makes little sense. Every patent-at-issue here is subject to a PTO proceeding. The analysis of the first factor does not change in view of the fact that some of the patents-at-issue are subject to an IPR proceeding and some to a CBMR proceeding. The reality remains that a stay in this case has the potential to simplify and streamline the issues for trial. The District Court had no discretion to ignore the existence of those other proceedings in reaching its conclusion.

Granting a stay will also reduce the burden of litigation on the parties and the courts. That is true not only for the reasons just discussed—the possibility of eliminating the case altogether or at the very least substantially narrowing the issues—but because the District Court's denial of a stay places a significant burden on parties and courts in proceedings other than this one. IV has filed six other suits on the same patents-at-issue in six different federal districts. Every one of those courts has granted a stay pending the PTO's proceedings or at least stayed proceedings pending a resolution of the stay motion. A213-214 (order staying the *Compass* case on June 4, 2014); A209-211 (order staying the *FNBO* case on May 6, 2014); A934-935 (ordering staying the *USBank* case on Aug. 7, 2014); A216-224 (order staying the *Commerce* case on June 4, 2014); A226-234 (order staying the *Huntington* case on June 10, 2014); A984 (order staying the *SunTrust* case on Aug. 14, 2014.) IV has not appealed the grant of a stay in any of those cases.

The value of the stays obtained in the Same Patent Cases will be significantly reduced if this case is allowed to go forward. JPMC will have to take discovery of IV, discovery that will have to be repeated in each of the other cases if the stays are lifted. Both JPMC and IV will

24

have to take third-party depositions.  *See* Dkt. No. 19 at 6, IV's Opp. to Motion to Stay Underlying Appeal.  Allowing this case to go forward will also require those third parties be deposed multiple times.  The District Court's refusal to join the other Same Patent Cases in granting a stay will impose litigation burdens not only on the parties to this case but to parties in other cases and third-parties as well.  Even if the District Court had discretion on the stay issue overall, the fact that the District Court consciously chose not to follow the rulings of six other courts is strong evidence of an abuse of that discretion.

## B.    The Case Is Far From Complete

The second factor to consider is "whether discovery is complete and whether a trial date has been set."  AIA § 18(b)(1)(B).  This Court held in *VirtualAgility* that "the time of the motion is the relevant time to measure the stage of litigation."  2014 WL 3360806, at *8.  JPMC's stay motion was filed on June 27, 2014.  A159 (Motion to Stay.)

Discovery and trial preparation were far from complete as of June 27.  Indeed, discovery had barely begun.  Document production had just begun three months earlier, and no e-mail had been produced.  No

depositions had been taken or even noticed in this case by June 27.[1]  No written discovery had been propounded, no dispositive motions or expert reports had been filed, and no trial date had been set.

It is true that claim construction had taken place by June 27.  It took place, however, before the start of discovery.  The parties had to jointly request the opportunity for briefing—which was allowed—but claim construction took place at the outset and before the development of any evidence, unlike the normal patent trial practice of holding claim construction towards the end of the case.

In *VirtualAgility*, this Court found that the early stage of the case was a fact that "heavily favors a stay."  2014 WL 3360806, at *6.  This case is only somewhat further along than *VirtualAgility* was when JPMC filed the stay motion.  The *VirtualAgility* Court noted, however, that "there remained eight months of fact discovery" and "jury selection was a year away" when a CBMR trial was instituted.  *Id.* at *8.  But for claim construction, this case is comparably far from completion.  The District Court "expect[s] the parties to finish fact discovery by the end of

---

[1]  One inventor was deposed in May 2014 in another case, subject to an agreement that the deposition could be used across all Same Patent Cases.  A198.

the year," more than six months after the stay motion was filed.  Expert discovery will presumably occur only after fact discovery is closed.  This case will be ready for non-Section 101-based dispositive motions only after the close of expert discovery.  In contrast to *VirtualAgility*—where jury selection was a year away—the District Court here indicated that it may be as many as fourteen months before all dispositive motions are resolved, let alone jury selection.  A8 ("I expect . . . that the case will be resolved, *by motion or jury*, by the summer of 2015." (emphasis added).)

This Court in *VirtualAgility* characterized the case as "at its infancy," even after a CBMR trial was instituted, finding that this factor favored a stay.  2014 WL 3360806, at *7.  The same is true here.

### C.    IV Will Suffer No Prejudice From Delay, and Will Obtain a Tactical Advantage From the Denial of Stay

The final factor to consider is "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party."  AIA § 18(b)(1)(C).  In this case, IV will suffer no prejudice from a stay whatsoever.  To the contrary, the denial of a stay is part of IV's strategy to obtain a tactical advantage in its various litigations.

27

The District Court's only finding with respect to prejudice was that a stay would lead to delay, and that such delay will necessarily prejudice IV and favor JPMC. That is not an acceptable argument for prejudice, as it applies in every case requesting a stay. Under the District Court's reasoning, no moving party could ever prevail on this factor. That cannot be the correct interpretation of subsection (C).

In *VirtualAgility*, this Court identified examples of what can—and what cannot—constitute undue prejudice. The fact that two parties are direct competitors can in some circumstances establish prejudice. This is not the case here. Failure to seek a preliminary injunction, delay in filing suit for infringement, and that the patentee seeks only monetary damages all counsel against a finding of prejudice. 2014 WL 3360806, at *9. As the *VirtualAgility* court explained,

> Whether the patentee will be *unduly prejudiced* by a stay . . ., like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim. A stay will not diminish the monetary damages to which VA will be entitled if it succeeds in its infringement suit – it only delays realization of those damages . . .

*Id.* Since delay in the payment of monetary damages is compensated for by an award of prejudgment interest—routine in patent cases—a party only seeking monetary damages suffers no prejudice from delay in

the resolution of the case. *See General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 656 (1983) ("prejudgment interest should be awarded under § 284 absent some justification for withholding such an award.").

IV is an NPE and has further not sought either a preliminary or a permanent injunction. Indeed, it would not be entitled to such relief in any event. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). IV does not compete with JPMC or make any products at all. Should IV win the case, it can be fully compensated for any delay by money damages for infringement during the period of delay and by pre-judgment interest. *See, e.g., Evolutionary Intelligence LLC v. Yelp Inc.*, 2013 WL 6672451, *8 (N.D. Cal. Dec. 18, 2013) ("If the parties are not competitors (meaning that the plaintiff does not market any products or services covered by the claims of the patents-in-suit and does not seek a preliminary injunction), the plaintiff does not risk irreparable harm by the defendant's continued use of the accused technology and can be fully restored to the status quo ante with monetary relief."); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014) (granting a stay where the plaintiff's "status as a

non-practicing entity, rather than a market participant, suggests there is little risk that it will lose sales or goodwill in the market.")

IV's delay in suing JPMC for infringement also weighs against its claim of prejudice.  In *VirtualAgility*, this Court noted that "for some unexplained reason, [plaintiff] waited nearly a year after the '413 patent issued before it filed suit," a fact that "weigh[ed] against VA's claims that it will be unduly prejudiced by a stay."  2014 WL 3360806, at *10.  In this case, the youngest of the patents-at-issue issued nearly four years before IV filed suit, and the oldest of the patents-at-issue issued more than fifteen years before the suit was filed.  IV did not rush to the courthouse by any stretch of the imagination.  The fact that IV and its predecessors sat on their patent rights for years weighs against any claim of undue prejudice from a stay.

So too does the fact that in several other cases, *albeit* involving different patents, IV did not oppose a stay.  A404-406 (*Fifth Third Bancorp, et al.,* No. 1:13-cv-378); A381-383 (*Bank of Am. Corp., et al.,* No. 3:13-cv-358); A185-190 (*PNC Fin. Servs. Grp., Inc., et al.,* No. 2:13-cv-740.)  In one case, IV itself joined a stay motion.  IV not only argued that it would suffer **<u>no prejudice</u>**, it told the Pennsylvania District

Court that resolving the issue of validity in front of the PTO would both "spare the parties the burden and expense of litigating claims and issues before both the PTO and this Court" and "eliminate the risk of this Court and the PTO reaching conflicting conclusions on the claims of this matter, resulting in protracted litigation." *See* A187-188 (*PNC Fin. Servs. Grp., Inc.,* Joint Motion to Stay ¶ 10.) The court granted the stay based on those representations. IV should be judicially estopped from denying those claims in this case. *Ryan Operations GP v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 360-61 (3d Cir. 1996) (adopting doctrine of judicial estoppel and holding that non-parties can benefit from it).

This begs the question: why would IV oppose a stay in this case when it agreed to and even argued in favor of a stay in three other cases? There is only one logical conclusion: IV, not JPMC, is trying to use stay motions to gain a tactical advantage. A stay would allow the PTO to resolve disputes about the validity of the patents-at-issue and, should any claims survive, permit the first-filed suits to go to judgment first. In contrast, what IV asked for and received from the District Court—by means of a denied stay motion when stays have been granted

31

in every other case involving the same patents-at-issue—causes this case to leapfrog ahead of the other Same Patent Cases, giving IV an unreasonable tactical advantage in this case. The denial allows IV to sue multiple defendants in multiple jurisdictions, receive a "first shot" against one defendant, and then, if the other six cases ever resume, use knowledge gained in the first case to its own tactical advantage against the six other defendants.

JPMC, by contrast, does not gain any unfair tactical advantage from a stay. IV has not—and cannot—point to any "dilatory motive" for filing the stay request. To the contrary, JPMC filed its petition requesting CBMR shortly after the *Alice* decision changed the rules for patentable subject matter. In *VirtualAgility*, this Court found that filing a petition requesting CBMR less than four months after the suit was filed and subsequently filing a stay motion shortly thereafter was evidence that the moving party was not acting in bad faith or seeking an unfair tactical advantage. 2014 WL 3360806, at *9.

The District Court's only reason for a contrary conclusion was that it "would have the advantage of delay and continuing utilization of patented devices and systems that the law suit is intended to regulate."

32

A9.  But that conclusion makes no sense.  The issue of infringement has not yet been addressed.  IV is also not seeking injunctive relief.  In other words, JPMC will be able to continue to provide its services regardless of the outcome of this suit, subject to the possibility of having to pay damages.  And the amount of any such damages will not be affected at all by any delay.

### D.    The District Court Abused its Discretion in Denying the Stay

As explained in JPMC's Opposition to IV's Motion to Dismiss, the AIA "places a very heavy thumb on the scale in favor of a stay being granted. It is congressional intent that a stay should only be denied in extremely rare instances."  (Dkt. No. 25 at 6 (citing 157 CONG. REC. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).)  Indeed, situations where parties have to litigate the validity of a patent in two *fora* are "unacceptable" and are "contrary to the fundamental purpose of the [AIA] to provide a cost-efficient alternative to litigation."  (*Id*. (citing to 157 CONG. REC. S1364 (daily ed. Mar. 8, 2011).).)

In this case, the PTO has instituted an IPR trial of one of the patents-at-issue but has not yet acted on the others.  This Court in *VirtualAgility* stated that a District Court faced with a stay motion

premised on a filed but not-yet-instituted petition requesting PTO review has three options: (1) grant the stay, (2) wait to see if the review is instituted, or (3) deny the motion as premature without prejudice to renew after a review is instituted.  2014 WL 3360806, at *7.

The District Court did none of those things; it denied the stay outright.  Such denial is an abuse of discretion and is not an option even contemplated in *VirtualAgility*.  *See id.* ("While a motion to stay could be granted even before the PTAB rules on a post-grant review petition, no doubt the case for a stay is stronger after post-grant review has been instituted.").

In instituting an IPR trial, the PTO has already determined that "there is a reasonable likelihood" that at least one of the claims of the '666 patent is invalid.  *See* 35 U.S.C. § 314(a) (establishing a threshold standard for IPR).  Should the PTO initiate CBMR trials on JPMC's petitions, it will have made a determination that it is more likely than not that at least some of the claims as issue in this case are invalid.  35 U.S.C. § 324(a).  The role of the District Court is not to second-guess the determination of the PTO, and certainly not to preempt it before it can be made.  As this Court found:

a challenge to the PTAB's 'more likely than not' determination at this stage amounts to an improper collateral attack on the PTAB's decision to institute CBM review . . . . **Congress clearly did not intend district courts to hold mini-trials reviewing the PTAB's decision on the merits of the CBM review**. [Doing so] would undermine the purpose of the stay.

*VirtualAgility,* 2014 WL 3360806, at *5 (emphasis added).  Indeed, the District Court indicated that he was opposed to stays on principle:

> If I have discretion, I'll do what I have to do to run the case; and if something happens in the patent office that supersedes something I do, so be it.  But ***I don't wait for other people.***

A616 (Oct. 3, 2013, Conference at 10:4-7, 10:14-17 (emphasis added).)

The District Court further informed the parties that it was not its policy to stay cases in view of any post-grant review at the PTO:

> THE COURT: So a delegation, I am told -- I wasn't there -- a delegation of the judges in the patent office came to this court to describe what's going on there to in effect give the judges here assurance that those proceedings will be moved swiftly and a fresh look will be taken to the patents.  My view is that there is a case before me and it is my job to move the case as rapidly and efficiently as fairness requires.  So whatever is done in the patent office, you do.  ***But it is not cause to ask for delay in my court. That is my policy***.

A725-726 (May 8, 2014, Conference at 16:14-17:1 (emphasis added).)

Even if the District Court had discretion to consider whether to grant a stay—and it did not because *de novo* is the appropriate standard—a

blanket policy against stays is an abuse, not an application, of that discretion.[2]

## CONCLUSION

The District Court's decision denying a stay should be reversed and remanded with instructions to grant the stay motion. *See VirtualAgility,* 2014 WL 3360806, at *11 ("We reverse the district court's order denying Defendants' motion for a stay of the district court proceedings pending CBM review and remand with instructions to grant the motion.").

Dated: September 15, 2014          Respectfully submitted,

/s/ *Kenneth R. Adamo*
**KIRKLAND & ELLIS LLP**
Kenneth R. Adamo
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4839
Facsimile: (212) 446-4900
kenneth.adamo@kirkland.com

Brent P. Ray
Eugene Goryunov
300 N. LaSalle St.
Chicago, IL 60654

---

[2]  If this Court grants IV's Motion to Dismiss, Dkt. No. 18—which it should not—because JPMC's petitions for CBMR are still pending, the Court must grant JPMC leave to re-file its interlocutory appeal once a CBMR trial is instituted on JPMC's petitions.

Telephone: (312) 862-2000
Facsimile: (312) 862-2200
brent.ray@kirkland.com
egoryunov@kirkland.com

**DURIE TANGRI LLP**
Clement S. Roberts
Mark A. Lemley
217 Leidesdorff Street
San Francisco, California 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300
croberts@durietangri.com
mlemley@durietangri.com

# ADDENDUM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/11/14

-------------------------------------------------------- x
                                            :

INTELLECTUAL VENTURES II L.L.C.,     :

                           Plaintiff,     :

       -against-                   :

JP MORGAN CHASE & CO. et al.       :

                       Defendants.    :

-------------------------------------------------------- x

**ORDER DENYING MOTION
TO STAY CASE PENDING
PATENT AND TRADEMARK
OFFICE REVIEW OF
PATENTS AT ISSUE**

13 Civ. 3777 (AKH)

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

        In this case, Intellectual Ventures II, LLC ("Intellectual Ventures") asserts claims against JP Morgan Chase & Co. and related defendants (together, "JPMC") based on five patents. JPMC moves for a stay, pending review by the U.S. Patent and Trademark Office ("PTO"). The motion is based on twelve petitions filed by non-parties requesting that the PTO commence an *Inter Partes* Review ("IPR") of the patents at issue and five petitions that JPMC is in the process of filing, requesting that the PTO commence a Covered Business Method Review ("CBMR") of the patents at issue. At this time, the PTO has granted just one of the petitions, commencing an IPR of just one of the patents at issue, and JPMC is not a party to that review. Intellectual Ventures opposes the motion.

        For the following reasons the motion is denied.

## BACKGROUND

        Intellectual Ventures filed this lawsuit on June 4, 2013. Five patents are issue: U.S. Patents Nos. 6,715,084 (the '084 Patent), 6,314,409 (the '409 Patent), 5,745,574 (the '574 Patent), 6,826,694 (the '694 Patent), and 7,634,666 (the '666 Patent).

1

The parties have made significant progress towards trial. Following a tutorial, a claim construction was held on March 5 and 6, 2014 in accordance with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 516 U.S. 370 (1996), resulting in an order defining the patent claims at issue. *See* Doc. No. 82 (March 18, 2014 Order regarding Claim Construction and Patent Summaries). The pleadings have been closed, infringement and invalidity contentions have been exchanged; most written discovery has been accomplished; and depositions have been scheduled. *See* Doc No. 103 (transcript of May 8, 2014 status conference). By August 20, 2014, document discovery between the parties, but not of third-parties, should be complete, and a third of the intended depositions should have been taken. Expert discovery, *Daubert* hearings, and trial should follow. The case should be resolved, by motion or by jury, by the summer of 2015, two-plus years after filing.

On April 16, 2014, the Patent Trial and Appeal Board ("PTAB") of the PTO granted one of 12 petitions for IPR. Only the petition filed by International Business Machines Corporation ("IBM"), was granted, and only with regard to one patent, the '666 Patent. The petitions of 11 other non-parties have not been acted on.

On June 27, 2014, JPMC filed a motion in this Court to stay the proceedings pending the PTAB's resolution of: (1) the IPR of the '666 Patent, (2) the other eleven petitions for IPR filed by non-parties but which the PTAB has not acted on, and (3) five petitions for CBMR that JPMC intends to file. JPMC then filed petitions for CBMR of two of the five patents in suit, the '409 and '574 Patents on July 11 and July 18, 2014 respectively.

JPMC adds that the same patents as the five in issue in this case are also at issue in six other cases around the country—*Intellectual Ventures II, LLC v. First National Bank of Omaha* (D. Neb.), *Intellectual Ventures II, LLC v. BBVA Compass Bancshares* (N.D. Ala.),

2

*Intellectual Ventures II, LLC v. Commerce Bancshares* (W.D. Mo.), *Intellectual Ventures II, LLC v. Huntington Bancshares* (S.D. Ohio), *Intellectual Ventures II, LLC v. U.S. Bancorp* (D. Minn.), and *Intellectual Ventures II, LLC v. Suntrust Banks* (N.D. Ga.)—and all, except for the *Suntrust Banks* case, have been stayed by their presiding judges pending resolution of proceedings before the PTO.

## STANDARD OF REVIEW

Courts have an inherent authority to stay cases while proceedings are pending in another forum. *See Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). When deciding whether to stay a case based on proceedings before the PTO, courts generally consider the following factors:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Softview Computer Products Corp. v. Haworth, Inc.*, 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) (quoting *Xerox Corp.*, 69 F. Supp. 2d at 406); *accord Interface, Inc. v. Tandus Flooring, Inc.*, 4:13-CV-46-WSD, 2013 WL 5945177 (N.D. Ga. Nov. 5, 2013), *reconsideration denied*, 2014 WL 273446 (Jan. 22, 2014) (considering those same factors in connection with a motion to stay proceedings pending IPR).

With regard to JPMC's motion for a stay based on petitions for a CBMR it has filed and which it intends to file, the Leahy–Smith America Invents Act ("AIA")[1] provides similar criteria:

---

[1]   Pub. L. 112–29, 125 Stat. 284 (2011).

3

> If a party seeks a stay of a civil action alleging infringement of a
> patent . . . relating to a [CBMR] for that patent, the court shall
> decide whether to enter a stay based on—
> (A) whether a stay, or the denial thereof, will simplify the issues in
> question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has
> been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice
> the nonmoving party or present a clear tactical advantage for the
> moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of
> litigation on the parties and on the court.

AIA § 18(b)(1). *See also Capital Dynamics AG v. Cambridge Associates, LLC*, 13 CIV. 7766

KBF, 2014 WL 1694710 (S.D.N.Y. Apr. 1, 2014) (applying AIA § 18(b)(1)).[2] Here, the criteria

for a stay generally and § 18(b)(1) suggest the same result.[3]

## ANALYSIS

     I discuss JPMC's motion to stay according to the criterion of two different types

of proceedings before the PTAB: IPR proceedings and CMBR proceedings. I hold that a stay is

not advisable.

---

[2]     JPMC relies on statements made by Senator Schumer, in support of the AIA, in order to
argue that Congress intended for a virtually automatic stay of district court litigation while a
CMBR is pending. *See* 157 CONG. REC. S1053, 2011 WL 709598 (daily ed. Mar. 1, 2011)
(statement of Sen. Schumer) ("Since the entire purpose of the [CMBR] at the PTO is to reduce
the burden of litigation, it is nearly impossible to imagine a scenario in which a district court
would not issue a stay."); 157 CONG. REC. S1360-02, 1364 (daily ed. Mar. 8, 2011) (statement
of Sen. Schumer), 2011 WL 797877 (noting that denial of a stay while a CMBR is pending
would require "an extraordinary and extremely rare set of circumstances not contemplated in any
of the existing case law related to stays pending reexamination."). Senator Schumer's statements
are not part of the AIA, and in enacting § 18(b)(1) Congress did not provide for near-automatic
stays while CMBRs are pending. Rather, Congress instructed district courts to consider a
number of factors in deciding whether to stay the case.

[3]     I assume, without deciding, that § 18(b)(1) applies, even though at this time no CMBR
has been instituted.

## I.    *Inter Partes* Review Proceedings

### A.  Streamlining the Litigation in this Court

The IPR procedure allows a petitioner to cause the PTAB to review and cancel as unpatentable one or more claims of a patent only on a ground that could be raised under § 102 or § 103 and only on the basis of prior art consisting of patents or printed publications. *See* 35 U.S.C. § 311(b). The IPR thus allows a petitioner to challenge a patented invention only because the invention was patented or described in a prior patent before the effective filing date of the claimed invention, or because the invention was obvious. *See* 35 U.S.C. §§ 102(a)(1), (2), 103.

A decision of the PTAB concluding an IPR may streamline court proceedings, or it may not. If a patent claim is canceled, the patent holder is bound. If a claim is upheld, the petitioner may not attack the claim in court "on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e). But the IPR can take up to 18 months' time in the PTAB, and there may be two years of appellate review in the Federal Circuit, creating a three-year delay, or more. And it would not be unusual for parties to disagree on the scope and significance of a decision, or about the effects of issues not based on prior art, or on different patents, some similar and some different. One cannot tell, and meanwhile time is wasted, parties' business practices are paralyzed, and expenses mount.

I do not understand the sense of staying this entire litigation in order to wait for the PTAB's review of a single patent claim, where multiple patents and multiple claims are in issue. And, since JPMC is not a party, it will not be limited or precluded concerning any pleading or argument it wants to make. Further, there is another year, at most, of litigation before me in my court before the issues are resolved by trial. I fail to understand why it would

5

be cheaper, or more efficient or quicker to wait for three years and speculate what benefit might be achieved by an IPR.

### B.  Tactical Advantage

Staying this case would give JPMC an unfair tactical advantage.  Intellectual Ventures would lose the benefit promised by the Federal Rules of Civil Procedure—a "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1. JPMC would have the advantage of delay and continuing utilization of patented devices and systems that the law suit is intended to regulate.

### C.  The Effect of Delay on this Court's Proceedings

Staying this case pending the resolution of the petitions for IPR would interrupt the work of this Court.  The IPR process can take up to 24 months between the filing of a petition for review and the PTAB's issuance of a final decision.  *See* 35 U.S.C. §§ 314(b) (providing that the PTAB must issue a decision regarding whether to institute an IPR, within 3 months of the filing of the opposition, which is due 3 months after the petition is filed), 316(a)(11) (providing that the PTAB must issue a final decision within 1 year of instituting an IPR and providing that the 1 year period can be extended to 18 months for good cause).  The parties may then appeal the PTAB's decision to the Federal Circuit Court of Appeals, with all the attendant delays of the appellate process, perhaps another two years.  35 U.S.C. § 319.

Thus, staying this case pending the PTAB's resolution of the IPRs could result in substantial delay.

### D.  Conclusion

After considering the above factors, I conclude that it is not advisable for the Court to stay this case based on the petitions for IPR.  Staying this case pending the resolution of

the petitions for IPR would have only a speculative streamlining effect, and would present JPMC

with an unfair tactical advantage.  The case before me is moving speedily and efficiently to trial.

There is no good reason to disturb that progress.

**II.    Covered Business Method Review Proceedings**

JPMC also requests that I stay this action based on petitions for CBMR that it has

filed, and states that it intends to file, with the PTAB.

**A.  Whether a stay, or the denial thereof, will simplify the issues in question**
**and streamline the trial?**

Like the IPR procedure, the CBMR procedure allows a petitioner to attack a

patent on narrow grounds.  Through the CBMR procedure, a petitioner may request that the

PTAB review and cancel as unpatentable one or more claims of a covered business method

patent[4] on a ground that could be raised under sections 101 and 112 based on prior art.  *See* AIA

§ 18(a)(1)(C).  The CBMR thus allows a petitioner to challenge a patented invention only

because the invention was unpatentable, on the grounds of subject matter, lack of utility, the

absence of novelty, or obviousness, or based on the inadequacy of the written description of the

patent.  *See* 35 U.S.C. §§ 101, 112.

A decision of the PTAB concluding a CBMR may streamline court proceedings,

or it may not.  If a patent claim is canceled, the patent holder is bound.  If a claim is upheld, the

petitioner may not attack the claim in court "on any ground that the petitioner raised during [the

CBMR]."  AIA § 18(a)(D).  But the CBMR can take up to 18 months' time in the PTAB, and

---

[4]      A covered business method patent is a "patent that claims a method or corresponding
apparatus for performing data processing or other operations used in the practice, administration,
or management of a financial product or service, except that the term does not include patents for
technological inventions."  37 C.F.R. § 42.301(a).

there may be two years in the Federal Circuit, creating a three-year delay. And it would not be unusual for parties to disagree on the scope and significance of a decision, or about the effects of issues not based on prior art, or on different patents, some similar and some different. One cannot tell, and meanwhile time is wasted, parties' business practices are paralyzed, and expenses mount.

Again, I do not understand the sense of staying this entire litigation in order to wait to see whether the PTAB will initiate a review of some of the claims of these patents, when there are multiple patents and multiple claims. While JPMC, as the petitioner, will be unable to repeat in this Court any arguments that it makes before the PTAB, the CMBR's that JPMC is requesting still offer, at best, a piecemeal review of the patents. There is another year, at most, of litigation before me in my court before the issues are resolved by trial. I fail to understand why it would be cheaper, or more efficient or quicker, to wait for three-and-a-half years and speculate what benefit might be achieved by a CMBR.

**B. Whether discovery is complete and whether a trial date has been set?**

As discussed above, the proceedings in this Court are progressing. I expect the parties to finish fact discovery by the end of the year, and that the case will be resolved, by motion or jury, by the summer of 2015.

The CBMR process can take up to 24 months between the filing of a petition for review and the PTAB's issuance of a final decision. *See* 35 U.S.C. § 324(c)[5] (providing that the PTAB must issue a decision regarding whether to institute an CBMR, within 3 months of the filing of the opposition, which is due 3 months after the petition is filed); 37 C.F.R. § 42.300(c)

---

[5]    The AIA provides that CBMR is subject to the procedures of a post-grant review under chapter 32 of title 35. AIA § 18(a)(1).

8

(providing that the PTAB must issue a final decision within 1 year of instituting a CBMR and providing that the 1 year period can be extended to 18 months for good cause). The parties may then appeal the PTAB's decision to the Federal Circuit Court of Appeals, with all the attendant delays of the appellate process, perhaps another two years. 35 U.S.C. § 329.

Thus, staying this case pending the PTAB's resolution of JPMC's petitions for CBMR could result in substantial delay.

**C.  Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party**

Again, staying this case would give JPMC an unfair tactical advantage. Intellectual Ventures would lose the benefit promised by the Federal Rules of Civil Procedure—a "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. JPMC would have the advantage of delay and continuing utilization of patented devices and systems that the law suit is intended to regulate.

**D.  Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

JPMC's argument that the PTAB's resolution of the petitions for CMBR will reduce the work in this Court and for the parties is largely speculative. I do not understand the sense of staying this entire litigation in order to wait to see what the PTAB will do.

**E.  Conclusion**

After considering the above factors, I conclude that it is not advisable for the Court to stay this case based on the petitions for CBMR. The case before me is moving speedily and efficiently to trial. There is no good reason to disturb that progress.

9

Accordingly, JPMC's stay motion is denied at this time.

### III. Conclusion

There is a great temptation on the part of a district judge, overseeing a large and diverse docket, to accept the promise of a stay and move on to other parts of his docket. But as pointed out here, patent claims, like all cases, deserve the same quality of treatment as Federal Rule of Civil Procedure 1 promises: a "just, speedy, and inexpensive determination."

In my experience, patent claims can be difficult, but not more so than other claims. They do not approach the administrative complexity of a multi-district litigation, or the 13,000 cases in the World Trade Center dockets over which I presided. They do not rival the wrought emotions and web of intentions in a heated criminal trial.

The case before me will end in less than a year. It makes no sense for me to delay its resolution further by waiting, for four years, on the intercession of another forum with only a limited jurisdiction over these claims.

With due respect to my colleagues who have granted a stay, I deny it.

## CONCLUSION

For the foregoing reasons, JPMC's motion for a stay is denied. The Clerk shall mark the motion (Doc. No. 128) closed.

SO ORDERED.

Dated:     New York, New York
           August 11, 2014

_____
ALVIN K. HELLERSTEIN
United States District Judge

13 MISC 00119

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
IN RE:                                     :
LOCAL PATENT RULES                         :          **M10-468**
OF THE                                     :
SOUTHERN AND EASTERN                       :          **ORDER**
DISTRICTS OF NEW YORK                      :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


     On November 28, 2012, the Board of Judges of the Southern District of New York approved the adoption of Local Patent Rules, as attached.

     These rules, having been posted for public comment and approved by the Judicial Council of the Second Circuit, hereby take effect on April 8, 2013.

    **SO ORDERED.**

_Loretta A. Preska_
Loretta A. Preska
Chief Judge


Dated:     New York, New York
         April **5** , 2013


g:\elly\rules\orders\2013 - Local Patent Rules.SD-EDNY - April.wpd

## UNITED STATES DISTRICT COURTS FOR THE
## SOUTHERN AND EASTERN DISTRICTS OF NEW YORK

### LOCAL PATENT RULES

**Local Patent Rule 1.     Application of Rules**

(a)     These Local Patent Rules apply to patent infringement, validity and unenforceability actions and proceedings. The Court may modify the obligations or deadlines set forth in these Local Patent Rules based on the circumstances of any particular case, including, without limitation, the simplicity or complexity of the case as shown by the patents, claims, technology, products, or parties involved.

(b)     The Local Civil Rules also apply to such actions and proceedings, except to the extent they are inconsistent with these Local Patent Rules.

**Local Patent Rule 2.     Initial Scheduling Conference**

When the parties confer pursuant to Fed. R. Civ. P. 26(f), in addition to the matters covered by Fed. R. Civ. P. 26, the parties must discuss and address in the report filed pursuant to Fed. R. Civ. P. 26(f):

(i)     any proposed modification of the deadlines or proceedings set forth in these Local Patent Rules;

(ii)     proposed format of and deadlines for claim construction filings and proceedings, including a proposal for any expert discovery the parties propose to take in connection therewith; and

(iii)     proposed format of and deadlines for service of infringement, invalidity and/or unenforceability contentions, including any proposed deadlines for supplementation thereof.

**Local Patent Rule 3.     Certification of Disclosures**

All statements, disclosures, or charts filed or served in accordance with these Local Patent Rules are deemed disclosures subject to Rule 26(g) of the Federal Rules of Civil Procedure.

**Local Patent Rule 4.     Admissibility of Disclosures**

Statements, disclosures or charts governed by these Local Patent Rules are admissible to the extent permitted by the Federal Rules of Evidence or Civil Procedure. However, the statements and disclosures provided for in Local Patent Rule 11 are not admissible for any purpose other than in connection with motions seeking an extension or modification of the time periods within which actions contemplated by these Local Patent Rules shall be taken.

NY 74008212v2

**Local Patent Rule 5.**     **Discovery Objections Based on Local Patent Rules**

A party may object to a mandatory disclosure under Fed. R. Civ. P. 26(a) or to a discovery request as conflicting with or premature under these Local Patent Rules only if the mandatory disclosure or discovery request would require disclosure of information of the kind dealt with by Local Patent Rules 6, 7, 8, 10, 11 and 12.

**Local Patent Rule 6.**     **Disclosure of Asserted Claims and Infringement Contentions**

Unless otherwise specified by the Court, not later than forty-five (45) days after the Initial Scheduling Conference, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions," which identifies for each opposing party, each claim of each patent-in-suit that is allegedly infringed and each product or process of each opposing party of which the party claiming infringement is aware that allegedly infringes each identified claim.

**Local Patent Rule 7.**     **Invalidity Contentions**

Unless otherwise specified by the Court, not later than forty-five (45) days after service of the "Disclosure of Asserted Claims and Infringement Contentions," each party opposing a claim of patent infringement must serve upon all parties its "Invalidity Contentions," if any. Invalidity Contentions must identify each item of prior art that the party contends allegedly anticipates or renders obvious each asserted claim, and any other grounds of invalidity, including any under 35 U.S.C. § 101 or § 112, or unenforceability of any of the asserted claims.

**Local Patent Rule 8.**     **Disclosure Requirement in Patent Cases Initiated by Declaratory Judgment**

In all cases in which a party files a pleading seeking a declaratory judgment that a patent is not infringed, is invalid, or is unenforceable, Local Rule 6 shall not apply with respect to such patent unless and until a claim for patent infringement of such patent is made by a party. If a party does not assert a claim for patent infringement in its answer to the declaratory judgment pleading, unless otherwise specified in the Court's Scheduling Order, the party seeking a declaratory judgment must serve upon all parties its Invalidity Contentions with respect to such patent that conform to Local Patent Rule 7 not later than forty-five (45) days after the Initial Scheduling Conference.

**Local Patent Rule 9.**     **Duty to Supplement Contentions**

The duty to supplement in Fed. R. Civ. P. 26(e) shall apply to the Infringement Contentions and the Invalidity Contentions required by Local Patent Rules 6 and 7.

**Local Patent Rule 10.**     **Opinion of Counsel**

Not later than thirty (30) days after entry of an order ruling on claim construction, each party that will rely on an opinion of counsel as part of a defense to a claim of willful

2

infringement or inducement of infringement, or that a case is exceptional, must produce or make available for inspection and copying the opinion(s) and any other documents relating to the opinion(s) as to which attorney-client or work product protection has been waived as a result of such production.

**Local Patent Rule 11.    Joint Claim Terms Chart**

By a date specified by the Court, the parties shall cooperate and jointly file a Joint Disputed Claim Terms Chart listing the disputed claim terms and phrases, including each party's proposed construction, and cross-reference to each party's identification of the related paragraph(s) of the invalidity and/or infringement contention(s) disclosures under Local Rules 6 and 7.

**Local Patent Rule 12.    Claim Construction Briefing**

Unless otherwise specified by the Court:

(a)    Not later than thirty (30) days after filing of the Joint Disputed Claim Terms Chart pursuant to Local Patent Rule 11, the party asserting infringement, or the party asserting invalidity if there is no infringement issue present in the case, must serve and file an opening claim construction brief and all supporting evidence and testimony.

(b)    Not later than thirty (30) days after service of the opening claim construction brief, the opposing party must serve and file a response to the opening claim construction brief and all supporting evidence and testimony.

(c)    Not later than seven (7) days after service of the response, the opening party may serve and file a reply solely rebutting the opposing party's response.

3

## **PROOF OF SERVICE**

I hereby certify that on September 15, 2014, I caused this Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following CM/ECF users: Elizabeth Day, Thomas Richard Burns, Jr., Ian Feinberg, Marc Belloli, and Nickolas Bohl.

In addition, I certify that I served a copy of this Brief of Appellants via electronic mail to the following counsel and addresses:

- Elizabeth Day, eday@feinday.com
- Thomas Richard Burns, Jr., burns@adduci.com
- Ian Feinberg, ifeinberg@feinday.com
- Marc Belloli, mbelloli@feinday.com

    Nickolas Bohl, nbohl@feinday.com

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellants will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

Dated:  September 15, 2014           /s/ *Kenneth R. Adamo*
_____

                                        Kenneth R. Adamo

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32.  According to the word processing system used to prepare it, the brief contains 7,626 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14pt Century Schoolbook.

/s/ *Kenneth R. Adamo*
Kenneth R. Adamo